# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EVERETT RAY COTNEY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-19-233-RAW-SPS |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Everett Ray Cotney, Jr., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a

five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-four years old at the time of the administrative hearing (Tr. 41). He completed high school and one year of college, and has previously worked as an ammunition assembly laborer II, laborer, and caser (Tr. 22, 277). The claimant alleges inability to work since his protected filing date of January 31, 2016, due to COPD, spinal stenosis, hearing problems, personality disorder, and degenerative disc disease (Tr. 276).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on January 30, 2017. His applications were denied. ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 7, 2018 (Tr. 14-28). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found at step four that the claimant could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could only occasionally climb stairs/ramps and never climb ladders/ropes/scaffolds. Additionally, he could only frequently balance, stoop, kneel, and

crouch, but never crawl, and that he must avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants. Finally, he found that the claimant must alternate sitting and standing every 20-30 minutes throughout the workday in order to change position for a brief positional change, but without leaving the workstation (Tr. 18). The ALJ then concluded at step five that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, electrical accessories assembler, ticket seller, and booth cashier (Tr. 22-24).

## Review

The claimant's sole contention is that the ALJ erred by failing to properly account for his subjective complaints. The undersigned Magistrate Judge finds this contention unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of degenerative disc disease and COPD, as well as the medically determinable impairments of depressive, bipolar, and related disorders (Tr. 17). The relevant medical evidence reveals that the claimant largely received treatment through the VA. The claimant has been rated with a 40% service-connected disability as to his degenerative disc disease and radiculopathy, as well as 10% for tinnitus and 0% for bilateral hearing loss (Tr. 270). MRI testing of the lumbar spine from March 2015 revealed relatively stable multilevel spondyloarthropathy and recommended a repeat MRI in twelve months (Tr. 350). The claimant underwent repeat MRI testing of the lumbar spine on May 23, 2016, which revealed multilevel degenerative changes involving the lumbar spine with multilevel central canal and neural foraminal outlet narrowing of varying degrees (Tr. 353). An MRI of the cervical spine conducted on

May 27, 2016 revealed multilevel degenerative changes involving the cervical spine, with associated multilevel central canal and neural foraminal outlet narrowing of varying degrees, along with paranasal sinus disease (Tr. 356).  An MRI of the left hip conducted on June 7, 2016 revealed no acute findings (Tr. 359).  The claimant underwent a series of epidural steroid injections to treat his low back pain (Tr. 446, 522, 526, 584-585, 629).

The claimant underwent another MRI of the lumbar spine on November 6, 2017.  This scan revealed multilevel disc desiccation indicating intervertebral disc degeneration with disc displacements, noting it was "fairly stable as compared with 5/23/16" (Tr. 587).  On December 7, 2017, the claimant reported worsening back pain (Tr. 613).  The claimant was also referred to physical therapy in 2018, in which he was instructed in exercises to perform at home and given a TENS unit (Tr. 608).

On May 31, 2017, Dr. Kathleen Ward conducted a mental status examination of the claimant, in which she noted he had a cynical worldview, and that he had limited relationships and sleep problems that could be related to mild depression, for which she recommended talk therapy (Tr. 536-537).  She assessed him with alcohol use disorder by history and unspecified depressive disorder (Tr. 537).

State agency physicians determined that the claimant could perform light work with no additional limitations, except on review the physician found the claimant should avoid concentrated exposure to fumes, gases, dust, odors, and poor ventilation (Tr. 93-96, 123-125).  State physicians determined that the claimant's alleged mental impairments were non-severe (Tr. 93).

At the administrative hearing, the claimant testified that he cannot stand very long, gets winded easily, and cannot be around dust because he easily catches pneumonia (Tr. 54). He stated that he uses an inhaler twice a day for his COPD (Tr. 55). He also indicated that he's been diagnosed with spinal stenosis, Schmorl's nodes, pinched nerves, and bulging discs, for which he had been treated with steroid injections, and physical therapy (Tr. 56). He testified that he was rated 40% disabled through the VA as to his back, and that he experienced 90% hearing loss in his left ear (Tr. 67). Additionally, he testified that he wears a back brace daily when he is at home (Tr. 59). As to treatment for his back, he stated that one doctor wanted to do surgery on his spine but another advised against it (Tr. 59). He stated that he can lift/carry thirty pounds and extend his arms, but that overhead reaching is difficult (Tr. 61). He stated that his hands get somewhat stiff, but that he is able to kneel, shower/bathe, and dress himself every day (Tr. 62). At the July 2018 hearing, he testified that he had gone hunting the previous October and caught a 130- to 140-pound deer that he and a friend had to drag into a boat (Tr. 63-64).

In his written opinion at step four, the ALJ thoroughly summarized the claimant's testimony as well as the medical evidence in the record. He found the claimant's statements "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20). He noted, *inter alia,* the claimant's MRI and x-ray results beginning in 2013 as well as pulmonary function tests, the series of epidural steroid injections, and Dr. Ward's mental status examination (Tr. 20-21). He pointed out that the claimant's MRI results were fairly stable but that the claimant reported worsening pain in his lower back (Tr. 21). He also noted that the claimant's exams revealed a functional range of motion, normal

strength, and negative straight leg raise tests (Tr. 22).  The ALJ assigned partial weight to the opinions of the state reviewing physicians as to the claimant's physical impairments, and great weight as to his mental impairments (Tr. 22). He ultimately determined that the claimant was not disabled.

The claimant contends that the ALJ erred in analyzing his subjective statements, asserting the ALJ's summary of the evidence and his own testimony was insufficient because it failed to contain specific reasons for his findings and therefore negatively impacted the RFC assessment.   The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain.  Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2]   Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test.  *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[3]  As part of the

---

[2]  SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996).  *See* SSR 16-3p, 2017 WL 5180304, at *1.  SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.*  at *2.

[3]  Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin,* 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the

symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

The ALJ's written opinion is summarized above, and the undersigned Magistrate Judge notes that the ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 44). In making such conclusions, the ALJ

---

factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). This Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

noted the evidence in the record related to the objective findings from the MRIs, X-rays, and pulmonary function tests, as well as the objective findings from his treating provider, the VA. Though perhaps not a model of analysis, the claimant himself has pointed to no evidence in the record that the ALJ missed, nor that would change his RFC assessment. Nor has he refuted his own testimony that he could lift/carry thirty pounds. Thus, the ALJ linked his subjective statement analysis to the evidence and provided specific reasons for the determination. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation of the claimant's subjective statements is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

    The ALJ specifically noted the medical records available in this case, gave reasons for his RFC determination, and ultimately found that the claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293(10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the

undersigned Magistrate Judge simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 23rd day of February, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**